IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:26 CR 60 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| ISHMAEL WAHID, *et al.*, | ) | |
| | ) | MEMORANDUM OPINION |
| Defendants. | ) | AND ORDER |

This matter is before the Court on Defendant, Ishmael Wahid's Motion to Suppress 4 Warrants and Motion to Suppress Evidence Obtained in the Search Incident to February 18, 2024 Arrest (ECF #114), and his Motion for a *Franks* Hearing. (ECF #144). The Government filed an Opposition to Defendant's Motion to Suppress. (ECF #142). On September 18, 2026, October 5, 2026, and October 6, 2026 in person hearings were held to allow Mr. Wahid and the other defendants a chance to argue their motions to suppress, and to present evidence in support of their requests for a hearing under *Franks v. Delaware*, 438 U.S. 154, 171 (1978).
(ECF #115, 147, 149).

## FACTUAL BACKGROUND

Mr. Wahid challenges the search warrants on multiple grounds, and requests a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

The following search warrants are at issue:

(1) 5:25MJ1261 for information associated with telephone numbers 234-716-9760, 234-238-3865, Apple ID JeffreyMourton97@gmail.com DSID No. 22365986166 that is stored

at premises controlled by Apple Inc. (filed 11/26/25);

(2) 5:26MJ1021 for a red Conex storage box located at 184 Massillon Road, Akron, Ohio (filed 2/10/26);

(3) 5:26MJ1043 for one green Apple Smartphone (Subject Device 1); and one blue Apple Smartphone (Device 2) currently located and held by HSI in the forensic room, located at Brooklyn Height, Ohio (filed 2/26/26); and,

(4) 5:26MJ1044 for a warehouse storage unit displaying "Akron Sales:sign on door, a red Connex storage box marked Number 4, and a blue Connex storage box mared [sic] Number 1 located at 184 Massillon Road, Akron, OH 44312 (filed 3/4/26).

Each of the four challenged warrants was issued by a Magistrate Judge Amanda Knapp, and was supported by an affidavit submitted by Michael Battaglia, a Special Agent of Homeland Security Investigations ("HSI"), United States Department of Homeland Security. Agent Battaglia obtained the information contained in the affidavit through his participation in a drug trafficking investigation. The affidavit avers that investigators received information from a confidential informant in April of 2025, that Mr. Wahid was involved in transporting bulk amounts of narcotics from the southwest border of the United States to Ohio.

On April 4, 2025, HSI arranged a controlled buy from Mr. Wimberly, a co-defendant, using a confidential informant referred to as CS-1. CS-1 contacted Mr. Wimberly by telephone to set up the drug transaction and discuss pricing for the narcotics. The sale took place at a residence believed to be Mr. Wimberly's. Investigators observed from outside. Within fifteen minutes after the purchase, Mr. Wimberly exited the residence, and traveled to Hamlin Street. Although investigators did not observe which residence Mr. Wimberly entered, his black Cadillac was parked in the vicinity of Mr. Wahid's residence at 913 Hamlin Street.

In May of 2025 the FBI met with HSI investigators and provided information from an

earlier FBI investigation of Mr. Wahid. The information from the earlier investigation was obtained in 2024-2025. The FBI had multiple human sources who provided information about Mr. Wahid's involvement in drug trafficking. One of the cooperating sources admitted to purchasing drugs from Mr. Wahid in the past. CS-1 provided information on Mr. Wahid that the investigators were able to independently verify, therefore, they believed that CS-1 was truthful and reliable. CS-1 told the FBI that Mr. Wahid was transporting bulk quantities of drugs from California to Ohio, using a female courier who transported the drugs on Greyhound or other charter buses.

On July 24, 2025, Detectives from the Parma Police Deparment used CS-1 to conduct a controlled purchase of cocaine from Mr. Wahid. The interaction was recorded. During that buy, Mr. Wahid and CS-1 talked about setting up another trip to California to purchase and transport another large shipment of narcotics. Investigators continued to conduct surveillance of Mr. Wimberly and Mr. Wahid through August 2025. During this period, CS-1 told the investigators that Mr. Wahid was no longer using charter buses to transport narcotics, and instead had switched to using a semi-truck for the transport. CS-1 identified Mr. Wahid's telephone number as (657) 478-3906.

On September 24, 2025, a woman in Canton overdosed on unknown narcotics. A phone seized during the investigation of her death included calls to the (657) 478-3906 number identified as belonging to Mr. Wahid. Communications on that phone indicated that its owner was likely with the deceased at or near the time of her death. They also established that it was likely that the owner of the phone was the drug supplier of the deceased.

On October 4, 2025, while investigating another overdose death, police obtained

statements from multiple witnesses. The witnesses stated Mr. Wahid had been called by another person present to bring drugs to the location, and that Mr. Wahid had showed up with cocaine, Xanax, methamphetamine, marijuana, and fentanyl. This information was corroborated by phone records that provided communications between a person at the overdose and the (657) 478-3906 phone associated with Mr. Wahid.

In June of 2025, investigators obtained a warrant for call logs and text messages from a TextNow user account for the number (657) 478-3906. The account came back with username Jeffreymourton97, account address: 919 Hamlin Akron, OH, and DSID: 1218432143. This warrant uncovered texts between Mr. Wahid and known drug traffickers in the Akron area. Investigators also learned that Mr. Wahid was addressed by the nicknames "Ish" and "Chris" in text messages. The search also uncovered two other phone numbers associated with the Jeffrey Mourton account at the same address, and the same DSID number. Those numbers, (234) 716-9760 and (234) 238-3865, are the subject of the warrant request at issue in Mr. Wahid's current motion. Based on the above information contained in the probable cause affidavit for 5:25MJ1261, the Magistrate found probable cause to issue the requested warrant.
The warrant was issued on November 26, 2025.

The second warrant, 5:26MJ1021 was for a red Connex box at the storage location 184 Massillon Road, Akron, Ohio. The affidavit in support of that warrant included much of the same background information as set forth above. Specifically, it described information obtained from confidential sources who had knowledge of Mr. Wahid. These sources told investigators that Mr. Wahid was involved in the transport of bulk narcotics from California to Ohio, and that he used semi trailers to transport the drugs.

The affidavit outlined the controlled buys that occurred on April 4, 2025 and July 24, 2025, and summarized information obtained through the search of the TextNow accounts. The affidavit also summarized information obtained about Mr. Wahid from the FBI during a meeting in May of 2025.

In addition to the information discussed above, the affidavit in support for 5:26MJ1021 stated that CS-2 told the FBI that Mr. Wahid was using a storage location in Akron, Ohio to store bulk quantities of drugs. CS-2 provided an address for the storage location as 184 Massillon Road, Akron, Ohio. Investigators conducted surveillance of the address provided and observed that it appeared to be a tractor trailer storage facility with multiple garage doors. An additional source, CS-3, who was deemed reliable, told investigators that he had purchased large amounts of drugs from Mr. Wahid. He further stated that Mr. Wahid travels to California and transports hundreds of pounds of narcotics to Ohio and then distributes the drugs throughout northeast Ohio. He also stated that Mr. Wahid mainly communicated through encrypted applications such as "Signal" or "Whatsapp."

In January of 2026, Mr. House, another of Mr. Wahid's co-defendants, was arrested as he was driving his semi-truck from California to Ohio and was found to have eight kilograms of cocaine and $144,990 in U.S. Currency concealed inside the truck. The phone number (234) 238-3865 which had been associated with Mr. Wahid was shown to have contacted a phone associated with Mr. House and his trucking company six times between October 20, 2025 and November 5, 2025. Mr. House was known to have had a long criminal history of drug trafficking convictions.

Mr. Wahid was seen on pole cameras showing up at the 184 Massillon Road storage facility on several different occassions. He was also seen accessing the target red Conex box

located in the parking lot there. On or about February 6, 2026, CS-1 told investigators that Mr. Wimberly was expecting a drug shipment to arrive in the coming days. On February 9, 2026, Mr. Wahid was seen at the target unit taking a large roller suitcase from a ride share vehicle into the target unit and leaving it inside.

Based on this information, the Magistrate Judge found probable cause to issue a search warrant for the red Connex box or target unit. The search resulted in the seizure of bulk quantities of suspected crystal methamphetamine, fentanyl, cocaine, and a firearm. On February 12, 2026, HSI conducted a search of Mr. Wimberly's residence, during which they seized bulk quantities of suspected crystal methamphetamine and fentanyl, currency, and multiple firearms. Mr. Wimberly was arrested and taken to Mahoning County Jail in Youngstown, Ohio.

On February 17, 2026, HSI listened to a recorded jail call between Mr. Wimberly and a woman believed to be his sister. The woman stated that "Chris," a known alias of Mr. Wahid, came by Mr. Wimberly's residence after the search. She told Mr. Wimberly that "Chris's" phone number was (330) 703-8247.

On February 19, 2026, Mr. Wahid was arrested. During a search of his vehicle, investigators found suspected illegal drugs, two Apple smartphones, and $84,807 in cash. HSI called "Chris's" phone number ((330) 703-8247). When this number was called, one of the two phones seized from Mr. Wahid showed the HSI number as an incoming call. Based on training and experience, the investigators know that people involved in drug trafficking use multiple phones to conduct their illegal activity and that their phones often contain evidence of those illegal activities. Drug traffickers also are known to take measures to hide their ownership or identity from the phone companies and others. Based on this information, the Magistrate Judge

found probable cause to issue a search warrant for two phones obtained during the search incident to Mr. Wahid's arrest.

Investigators further found through surveillance and rental documentation that Mr. Wahid rents a red and a blue Connex storage box , as well as warehouse space at 184 Massillon Road, Akron, Ohio. A person matching Mr. Wahid's description was seen on camera entering the warehouse via a garage door, as well as accessing red and blue Connex boxes in the parking lot. A prior search of the red Connex box found bulk quantities of illegal drugs and a firearm. Investigators were unable to complete the search of the container, including the inside of several vehicles found inside. Following Mr. Wahid's arrest investigators were talking to the owner of the warehouse when Michael Austin, a known drug trafficker arrived. Upon seeing the investigators, he drove across the street and continued to observe them. He appeared nervous and upset, and eventually left the area. The rental agreements for the boxes and the warehouse space were entered into by Forest Hilltop Properties. Mr. Wahid is the sole registered statutory agent for Forest Hilltop Properties.

The same day, on a recorded call from jail, Mr. Wahid had a conversation with his wife. She told him she was not good and to be "aware the shaitan is listening" and "making moves." She told him to talk to "brother 'Clothes,'" and that he "might as well forget that... the thing you were trying to get "Work" to do." He asked, "With my car?" and she replied, "the car, you can't, that and the other thing...the warehouse." Mr. Wahid asked "what's wrong with that, cleaning up my warehouse?" His wife replied, "People went to go take care of it...and there was some people already there for it.... you heard me...already therefor it... shaitan is listening..."

Based on the above information, the Magistrate Judge found probable cause to issue a

search warrant for the warehouse unit and the two Connex boxes.

## LEGAL STANDARD

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing, the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. "While the Fourth Amendment secures the right of the people to be free from unreasonable searches and seizures, it does not, in explicit language, provide any remedy for the violation of this right." WILLIAM E. RINGEL, SEARCHES AND SEIZURES, §1:5, 2d ed. 2025; *see also*, *United States v. Leon*, 468 U.S. 897, 906, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984) . The Supreme Court eventually adopted the exclusionary rule contained in the Fifth Amendment as a necessary implication of the Fourth Amendment, thereby prohibiting the use of evidence obtained in violation of the Constitution in any judicial proceeding. *Weeks v. United States*, 232 U.S. 383, 34 S. Ct. 341, 58 L. Ed. 652 (1914); *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 1081(1961).

Although the exclusionary rule has remained, the justification supporting its application has narrowed over time. When originally established, the exclusionary rule was seen by the Supreme Court as both a means of deterring improper policing and of maintaining judicial integrity. RINGEL, §1.5. However, in *Leon*, 468 U.S. 897 and *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S. Ct. 3424, 82 L. Ed. 2d 737 (1984), the Supreme Court made clear that the exclusionary rule should not be used to deter potential errors of judgment in judicial decisions.

Rather, it should be employed to "operate as a 'systemic' deterrent" to prevent police misconduct and overreach. *Leon*, 468 U.S. at 916-17 ("[T]he exclusionary rule is designed to deter police misconduct, rather than to punish the errors of judges and magistrates." ). In doing so, the *Leon* Court also explicitly held that the exclusionary rule is not in and of itself a Constitutional right, rather it is a judicially imposed remedy designed to promote adherence to the principles protected by the Fourth Amendment. *Id.* at 906; *see also*, *United States v. Calandra*, 414 U.S. 338, 348, 414 U.S. 354 (1974). Hence, not every violation of the Fourth Amendment justifies application of the exclusionary rule.

In order to justify the exclusion of evidence found during the execution of a search warrant, a defendant must satisfy several criteria. First, they must establish that they have standing to challenge the search. Second, they must show that the warrant lacked probable cause. *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984). Finally, they must establish that the officers executing the warrant were not acting in good faith. *Leon*, 468 U.S. 897. In situations where a search warrant has been issued, the burden of proving a violation of the Fourth Amendment, and the appropriateness of exclusion, rests with the party seeking to suppress evidence obtained during a search. *Rakas v. Illinois*, 439 U.S. 128, 144 (1978)(citing *Simmons v. United States*, 390 U.S. 377, 389-90 (1968).

Probable cause exists when there exists "a 'fair probability' or 'reasonable ground to believe' that evidence of a crime or contraband will be found in a particular place." *Id.* "Probable cause is not a high bar." *United States v. Sanders*, 106 F.4th 455, 462 (6th Cir. 2024). In order to issue a warrant the affidavits need not include an "actual showing" of criminal activity at the location to be searched. *United States v. Christian*, 925 F.3d 305, 311-12 (6th Cir. 2019).

Rather, a supporting affidavit need only show direct or circumstantial support to find, beyond a mere suspicion, that the searched premises contains contraband or evidence of a crime. *See e.g., United States v. King,* 227 F.3d 732, 739 (6th Cir. 2000)*; Illinois v. Gates,* 462 U.S. 213 (1983); *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005); *United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016).

When deciding whether to exclude evidence obtained pursuant to a warrant, "the district court 'owes great deference' to 'the issuing judge's probable cause determination.'" *United States v. Walker*, 2026 U.S. App. LEXIS 29543, *3 (6th Cir. Sept. 25, 2026)(citing *United States v. Sanders*, 106 F.4th 455, 461 (6th Cir. 2024)). A judicial determination of probable cause, once made, must not reversed in the absence of clear error." *United States v. Calloway*, 116 F.3d 1129, 1132 (6th Cir. 1997)(citation omitted); *see also, e.g, United States v. McLevain*, 310 F.3d 434, 439 (6th Cir. 2002). "Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause," therefore, "the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." *Leon*, 468 U.S. at 914 (citing *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). "[T]he task of the reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the [judicial officer's] decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984); *see also, e.g., United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003).

## ANALYSIS

The government does not challenge the defendant's standing to challenge the search

warrants.

A. Jurisdiction

Mr. Wahid challenges the Magistrate Judges' jurisdiction to hear and issue the challenged search warrants. He contends that the affiant did not identify a district in which to search for the property at issue and, therefore, the Magistrate did not have the legal authority to review the warrant requests. Federal Rule of Criminal Procedure 41(b) establishes that a United States Magistrate has the authority to sign a warrant to search for and seize a person or property located within the district, at the request of a federal law enforcement officer. The warrants issued on February 10, 2026 and February 27, 2026 included the location of the search. The location, 184 Massillon Road in Akron, Ohio is within the Northern District of Ohio, Eastern Division. Magistrate Judge Knapp has full authority to issue warrants within this district.

The warrant issued on February 26, 2026 allowed investigators to access information stored on two phones that were in their possession in Brooklyn Heights, Ohio. Brooklyn Heights Ohio is within the Northern District of Ohio, Eastern Division. Magistrate Judge Knapp has full authority to issue warrants within this district.

The warrant issued on November 26, 2025 sought electronic communications and records information held by Apple, Inc.. Under the Stored Communications Act, any court of competent jurisdiction may issue an order for disclosure if there are specific and articulable facts showing that the information is relevant and material to an ongoing criminal investigation. 18 U.S.C. §2703(d). A court of competent jurisdiction includes any district court (including a Magistrate Judge of such court) that has jurisdiction over the offense being investigated. 18 U.S.C. §2711(3)(A)(I). The Northern District of Ohio has jurisdiction over the offense being

investigated. Therefore, Magistrate Judge Knapp had full authority to issue the warrant.

B. Probable Cause

In order to justify the exclusion of evidence a defendant must first establish that the warrant lacked probable cause. A warrant is based on probable cause if it is supported by an affidavit that establishes a fair probability, or likelihood that the specific place to be searched will contain the specific things that law enforcement is looking for. *United States v. Reed*, 993 F.3d 441, 447 (6th Cir. 2021). A review of the sufficiency of the evidence presented in support of a search warrant is limited to the information contained in the four corners of the supporting affidavit. *See, e.g.*, *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009); *United States v. Brooks*, 594 F.3d 492 (6th Cir. 2010) . The affidavit must be judged based on a totality of the circumstances, using commonsense, and taking into consideration that they are "normally drafted by non-lawyers in the midst and haste of an on-going criminal investigation. *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004); *United States v. Pelham*, 801 F.2d 875, 877 (6th Cir. 1986); *United States v. Brooks*, 594 F.3d 488, 490 (6th Cir. 2010).

Reliance on hearsay is entirely proper. *United States v. Gunter*, 551 F.3d 472, 479 (6th Cir. 2009). Further, probable cause may be based upon information received from informants, as well as information within the affiant's own knowledge. *Franks,* 438 U.S. at 165. When information is obtained from informants, the affidavit must provide "some of the underlying circumstances from which the officer concluded that the informant was . . . 'credible' or his information 'reliable.'" *Aquilar v. Texas*, 378 U.S. 108, 114 (1964); *Franks*, 438 U.S. at 165.

When considered as a whole, each of the warrant affidavits challenged by Mr. Wahid easily meet the probable cause requirement. The affidavits included information, from sources

deemed reliable, that directly tied Mr. Wahid, his telephones, and the storage unit and boxes to drug trafficking activity. The information provided by the outside sources was corroborated by Agents through surveillance, pole cameras, and records research.

There was evidence, both direct and circumstantial that indicated Mr. Wahid was storing drugs in the locations subject to the search warrants, and that he used multiple telephones to conduct drug trafficking business. The affiant also established that based on his training and experience the phones were likely to contain evidence of drug trafficking, and the conversation between Mr. Wahid and his wife indicated that he had attempted to clear contraband out of the storage unit and boxes. A "practical common sense evaluation of all of the circumstances" leaves no question that the affidavit established a sufficient nexus between the property searched and the alleged crimes, and was substantially likely to uncover evidence related to those crimes. *See United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008); *see also Walker,* 2026 U.S. App. LEXIS 29543, at *7.

There was no error, let alone clear error, in the Magistrate's determination of probable cause. The affidavits supporting the search warrants provide substantial evidence to support a finding of probable cause and the issuance of the warrants. The information provided establishes more than a fair probability, or likelihood that the authorized searches would contain the specific items sought by law enforcement. The warrant was supported by probable cause and its issuance and execution did not violate Mr. Wahid's Fourth Amendment rights. There is no basis upon which to exclude any evidence obtained during the search of this property.

C. <u>Good Faith Execution</u>

Even if the warrant affidavit did not support a finding of probable cause, the evidence

obtained should not be suppressed. The exclusionary rule does not apply when officers reasonably rely on a search warrant, even one that is unsupported by probable cause, or is technically deficient on its face. *Leon*, 468 U.S. 897; *Sheppard*, 468 U.S. 981. Except in extraordinary circumstances, the existence of a search warrant issued by a magistrate suffices to show that the executing officer acted in good faith in conducting the search. *United States v. Ross*, 456 U.S. 798, 823 n. 32 (1982); *Leon*, 468 U.S. at 922. "[W]here officers rely in an objectively reasonable fashion on a search warrant issued by a neutral magistrate that is subsequently found to be invalid, the Fourth Amendment exclusionary rule does not require suppression of the fruits of the search." *United States v. Bowling*, 900 F.2d 926, 931 (6th Cir. 1990).

The United States Supreme Court has recognized four grounds for finding extraordinary circumstances that could override the good faith presumption:

> (1) if the magistrate or judge issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth, *Franks v Delaware*, 438 U.S. 154 (1978);
>
> (2) if the magistrate wholly abandoned his judicial role, to the degree that the warrant was open-ended and left to be completed after the seizure was already carried out;" *Leon* at 923 (citing *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979);
>
> (3) if the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *Brown v. Illinois*, 22 U.S. 263-64 (White J., concurring in judgment); or
>
> (4) if the warrant is "so facially deficient - i.e. in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably be presumed to be valid." *Leon* at 923; *Cf Massachusetts v. Sheppard*, 468 U.S. 988-991.

"In short, where the officer's conduct is objectively reasonable, 'excluding the evidence will not

further the ends of the exclusionary rule in any appreciable way; for . . . the officer is acting as a reasonable officer would and should act under the circumstances. Excluding the evidence [under such circumstances] can in no way affect his future conduct unless it is to make him less willing to do his duty.'" *Stone v. Powell*, 428 U.S. 465, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976). Mr. Wahid brings challenges to the good faith execution of the warrants under exceptions one (1) and four (4).

1. <u>Veracity of Affidavit</u>

In order to prove the first exception, it is necessary to determine whether the officer(s) providing the affidavits for the search request included information that they knew was false or would have known was false but for their reckless disregard for the truth. "When 'the Fourth Amendment demands a factual showing sufficient to compromise 'probable cause,' the obvious assumption will be a *truthful* showing.' This does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct . . . [b]ut surely it is to be 'truthful' in the sense that the information put forward is believed or appropriately accepted by the affiant as true." *Franks*, 438 U.S. at 164-165 (quoting *United States v. Halsey*, 257 F.Supp. 1002, 1005 (SDNY 1969)(emphasis in original).

A defendant who challenges the veracity of the affidavit may be entitled to an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, in order to meet his burden of proof. In order to be permitted a hearing under *Franks*, however, the defendant must first present "allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Franks* at 171. The allegations must be more than conclusory, and the proffer must specifically identify the claimed falsities, and include a

statement of supporting reasons, along with supporting affidavits or other reliable statements or an explanation justifying their absence. *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). "Only after the defendant makes this showing may the court consider the veracity of the statements in the affidavit or the potential effect of any omitted information." *United States v. Archibald*, 685 F.3d 553, 558-59 (6th Cir. 2012).

Identifying allegedly false statements provided by informants is insufficient, as are allegations of negligence or mistake. *Franks* at 171-172. "It is not enough for defendants to show that the affidavit contains false information; in order to obtain a *Franks* hearing, defendants must make a 'substantial preliminary showing' that the false statements originated with the government affiant." *United States v. Giacalone*, 853 F.2d 470, 477 (6th Cir. 1988). Further, it is insufficient "for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *United States v. Truett*, 2025 U.S. App. LEXIS 4764, *9 (6th Cir. Feb. 27, 2025)(quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)). Even if a defendant meets the requirements for a *Franks* hearing, as outlined above, he must also establish that "absent the challenged statements, the affidavit would fail to support a finding of probable cause." *Bennett,* 905 F.2d at 934. In this case, Mr. Wahid does not satisfy the requirements for obtaining a *Franks* hearing.

The only allegation of falsity in Mr. Wahid's motion is his purported belief that one statement in support of the search warrant for the red Connex box was "an obviously false statement." The statement at issue is that "CS-2 told the FBI that Wahid utilizes a storage location to store bulk drugs." He did not make a sworn declaration in support of this allegation and offered no attempt at an offer of proof. The only argument he offers for his claim is that

Special Agent Battaglia did not include this information in his Report of Investigation dated February 23, 2026. However, the agent clearly states that his affidavit is based on information beyond what he gathered in his own personal investigation, and this information was purportedly provided to the FBI, not to the HSI team that Special Agent Battaglia was a part of. Further, Mr. Wahid insinuates that this information could not be true because there was insufficient corroboration for it in the evidence set forth in the affidavit. When making a probable cause determination, a court is limited to the four corners of the affidavit. *United States v. Rose*, 714 F.3d 362, 366 (6th Cir. 2013). An affidavit is judged based on the adequacy of what it contains, not on what is lacking, or what more could or should have been included. *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000).

Mr. Wahid does not proffer any evidence that would disprove the statement. Nor does he allege that the agent making the affidavit created the false statement or knew that the information was false. Without some showing that the government official involved was or should have been aware of the falsity of the information, this bald allegation is insufficient to show bad faith.

In his motion for a *Franks* hearing, Mr. Wahid also argues that Mr. Battaglia's Report of Investigation does not state that CS-2 met Mr. Wahid at the red Connex box, or that he purchased drugs or saw drugs stored at the red Connex box. This does not point to a falsity in the affidavit, as the affidavit does not claim that these things occurred. Further, the fact that such statements are not in the affidavit, or the report, does not affect the probable cause determination. Things that are missing from the affidavit do not affect the adequacy of the affidavit.[1] *See Allen*, 211

[1] Mr. Wahid also argues that the affidavit did not adequately disclose the consideration expected by the confidential informants. This is an issue that may be appropriately

F.3d at 975.

Mr. Wahid also argues in his Motion for *Franks* hearing that "Steven Davis was not a SO1 2 or CS-1 as alleged by Agent Battaglia in his affidavit for 5:26MJ1021." However, Mr. Wahid has not provided any affidavit in 5:26MJ1021 that attempts to name any of the confidential sources or informants. None of the affidavits on docket in the 5:26MJ1021 mention an SO 1 or 2,or provides the identify CS-1 or any other confidential source. Therefore, Mr. Wahid has failed to identify any false statement within the affidavit. The statement Mr. Wahid argues is false was not in the affidavit and was, therefore, not relied on for, or necessary to the issuance of the warrant.[2]

Even if an informant were misnamed in an affidavit, a mere mistake is insufficient to create a right to a *Franks* hearing. *See Franks*, 438 U.S. at 164-165. Further, despite his assertion that there is an operational plan that allegedly documents the alleged misidentification of the CS for the April 4, 2025 buy, Mr. Wahid has not provided that document to the Court. He had the opportunity to present the evidence as part of his brief, as an attachment to his affidavit, as an exhibit to his Reply brief. Out of an abundance of caution, the Court also held hearings to allow each defendant to supplement their arguments and provide the Court with any offers of

---

addressed when assessing credibility of a witness at trial, but has no bearing on the validity of the search warrant.

2

The April 4, 2025 controlled buy is referenced in the affidavit without identifying information. It was not, however, necessary to the establishment of probable cause for that warrant. The information obtained from other sources about the existence, purpose, and address of the storage location, along with the information obtained from surveillance of the storage location was more than sufficient to support a finding of probable cause for the search.

proof they may have in support of their motions. These hearings were held on September 18, October 5, and October 6, 2026. Despite these multiple opportunities to provide evidence addressing the sufficiency and veracity of the warrant affidavit, Mr. Wahid failed to produce any evidence and instead made arguments based on unsupported inferences. He has provided no evidence or other offer of proof that could reasonably support the conclusion that Mr. Batteglia knowingly lied about the identity of his source, or any other information contained in the affidavits.

Mr. Wahid failed to meet his burden of providing a "substantial preliminary showing' that any false statements were made by the government affiant, let alone that such statements were knowing or reckless. Having failed to make the required showing, he is not entitled to a *Franks* hearing to challenge the veracity of the warrant affidavit.

2. Judicial Misconduct

Mr. Wahid does not allege any judicial misconduct in the issuance of the warrants. There is no allegation that the magistrate abandoned her judicial role, or otherwise acted in a way that would invalidate the warrant. *Leon*, 468 U.S. at 923 (citing *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979).

3. Indicia of Probable Cause

Defendant does not specifically contend that the search warrants had no indicia of probable cause and, therefore, could not reasonably have been relied on by the officers executing the warrants. Further, there would be no basis for such a claim. As set forth above, based on the evidence and information contained in the affidavit, an officer executing the warrant would have no objective reason to doubt its validity. This Court has determined that the affidavit provided a

substantial basis for a finding of probable cause. However, even if the Court of Appeals disagreed, the good faith exception would still apply. In order to find that an executing officer cannot rely on a judicially approved warrant, the officer would have to be aware that the supporting affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004).

In this case, even if the affidavit did not provide a sufficiently substantial basis upon which the judge could have found probable cause, it was not so deficient that a reasonable officer would have reason to believe that the issuance of the warrant was "entirely unreasonable." The affidavits for the challenged warrants are a far cry from the "bare bones" affidavits that a reasonable officer would be expected to recognize as defective despite its having been reviewed and approved by a judicial officer. *See, e.g., United States v. Neal,* 106 F.4th 568, 572 (6th Cir. 2024); *United States v. Reed*, 993 F.3d 441, 445 (6th Cir. 2021). Therefore, the officers had the right to rely on the judicial determination that a search was warranted. *United States v. Ross*, 456 U.S. 798, 823 n. 32 (1982); *Leon*, 468 U.S. at 922.

(4) Facial Validity

Mr. Wahid argues that the warrants at issue in his motion were facially invalid because they did not include a proper description of the person or property to be seized, and did not incorporate an affidavit providing probable cause. He does admit that the warrants reference attachments that list the items to be seized. (ECF #114, PageID 3345). Further, Mr. Wahid does not contend that the search resulted in the seizure of items not included in the scope of the items contained in the attachment.

The Sixth Circuit has consistently found that a search warrant is facially valid when it

incorporates other supporting documents if those documents are identified by name. *See United States v. Evans Landscaping*, 850 Fed.Appx. 942 (6th Cir. 2021). Documents are sufficiently identified if they are labeled as an attachment, such as Attachment A or Attachment B. *See, e.g., Id.*; *United States v. Pritchett*, 40 F.App'x 901, 906 (6th Cir. 2002). In each of the challenged search warrants, the warrant specifically incorporates labeled attachments in satisfaction of the requirement. Even one of the cases cited by Mr. Wahid, *Groh v. Ramirez*, 50 U.S. 551 (2004), noted that attachments appended to the warrant may be considered to be part of the warrant itself, if "the warrant uses appropriate words of incorporation" by reference and the attachments accompany the warrant." *Id.* at 558. All four warrants in Mr. Wahid's case use adequate language incorporating by reference the attachments that define the location and items to be searched and/or seized.

Mr. Wahid does not allege that the attachments were not included with or were unavailable to the executing officers at the time the warrant was executed. He does argue that the warrants nonetheless violate the Fourth Amendment because do they do not adequately incorporate the affidavit establishing probable cause. This, however, is not a constitutional requirement. The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The warrants all include a statement by the Magistrate Judge that she found "the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described...." This affirms that the Magistrate has performed her Constitutional mandate, making an independent determination that the affidavit and/or testimony presented by the requesting agent is sufficient to establish probable

cause for the described search and seizure. Thus, the warrant was issued upon probable cause, supported by oath or affirmation. The only content requirement for the warrant itself is that it particularly describes the place to be searched and the persons or things to be seized. As set forth above, the descriptions incorporated through identifiable attachments to the warrant or to the warrant application are sufficient to satisfy this requirement. *See United States v. Evans Landscaping Inc.*, 850 Fed. Appx. 942, 948 (6th Cir. 2021)(citing *Groh v. Ramirez*, 540 U.S. 551, 557 (2004); *United States v. Pritchett*, 40 F. App'x 901, 906 (6th Cir. 2002).

The Magistrate had jurisdiction to issue the warrants, and the application affidavit provided sufficient probable cause for the searches. Further, there is no showing of bad faith, and the warrants were facially valid. Therefore, the court cannot suppress the evidence obtained during execution of the search warrants. *See United States v. Leon*, 468 U.S. 897 (1984); *United States v. Bowling*, 900 F.2d 926, 931 (6th Cir. 1990).

D. Vehicle/Person Search

Defendant also argues the search of his person and his vehicle following his arrest was unconstitutional. Searches incident to a lawful arrest are an exception to the warrant requirement. *Arizona v. Grant*, 556 U.S. 332, 335 (2009). Police may conduct a warrantless search incident to a lawful arrest when it is reasonable to believe that evidence relevant to the crime of arrest may be found on the person or in the vehicle. *United States v. Hoffpowier*, No. 25-5327 (6th Cir. 2026). Searches of a person incident to a lawful arrest require no additional justification beyond the probable cause necessary to effectuate the arrest. *United States v. Robinson*, 414 U.S. 218, 235 (1973).

Mr. Wahid was arrested pursuant to a valid active federal warrant for charges of

possessing with intent to distribute a mixture or substance containing narcotics. The police were within their rights to search his person and his vehicle for any evidence relating to these charges. As to the argument that the search of car was delayed beyond the time necessary for the arrest, that argument has no substance. The duration of the stop depends on what happens during the stop and the attendant circumstances. *United States v. Lott*, 954 F.3d 919, 923 (6th cir. 2020).

The interaction between the officer and Mr. Wahid was not unnecessarily prolonged. The undisputed testimony at the October 6, 2026 hearing showed that the canine arrived within ten minutes to conduct a free air sniff, for which no probable cause or warrant is required. Mr. Wahid was already detained, and had requested that a family member pick up the car. The car was in the parking lot running at the time Mr. Wahid was arrested and there is no evidence that a family member could arrived sooner than ten minutes in order to take possession of the car.

Further, the officer had a right and an obligation to address potential safety concerns with regard to the vehicle. The vehicle was unlocked and running at the time of the arrest, and no one was on site to take possession of the vehicle. The officer also had the right to investigate the car attendant to Mr. Wahid's arrest. Mr. Wahid was being arrested for a drug trafficking offense and prior to his arrest, the officer saw Mr. Wahid reach into the rear passenger side door and access a bag before leaving the vehicle. The officer had probable cause to believe the car may contain evidence relevant to the charges against Mr. Wahid based on the nature of the arrest warrant and the observed behavior. Further, following the canine's alert, he had probable cause to extend the search to the interior of the vehicle. Mr. Wahid has not demonstrated a Fourth Amendment violation in the search of his person or his vehicle attendant to his arrest. There is no basis upon which to exclude any evidence obtained during those searches.

E. Delayed Notice

At the October 6, 2026 hearing, Mr. Wahid raised a new challenge to the search warrant for the red Connex box in 5:25MJ1021. The Patriot Act, 18 U.S.C. §3103a(b), permits warrants to be executed without notice if a court finds that immediate notification may have an adverse result, and if the delay in notification is for a reasonable amount of time. The warrant in this case did not check the box indicating that there had been a finding under 18 U.S.C. §3103a(b) that immediate notification would have an adverse effect, but it did authorize a 30 day delay in notification. The warrant application provided sufficient support for a finding that immediate notification would have an adverse effect because it would have clued the target into the existence of existing surveillance and would jeopardize the investigation.

Regardless of whether the face of the warrant communicated the findings required by the Patriot Act, the exclusionary rule is not an available remedy for the alleged deficiency. "[T]here is no exclusionary rule generally applicable to statutory violations." *United States v. Abdi*, 463 F.3d 547, 556 (6th Cir. 2006). "The availability of the suppression remedy for. . . statutory, as opposed to constitutional violations . . . turns on the provisions of [the statute] rather than the judicially fashioned exclusionary rule aimed at deterring violations of Fourth Amendment rights." *United States v. Clenney*, 631 F.3d 658, 667 (4th Cir. 2011)(quoting *United States v. Donovan*, 429 U.S. 413, 432 n.22 (1977)). "The exclusionary rule is an appropriate sanction for a statutory violation only where the statute specifically provides for suppression as a remedy or the statutory violation implicates underlying consitutional rights." *Abdi*, 463 F.3d at 556. To the extent that communication of the findings supporting delayed notice may have fallen short, it would have been a statutory violation and did not affect the constitutionality of the warrant.

In this case, there is no constitutional violation because the executed warrant was issued on probable cause and described the search and items to be seized with particularity. The Fourth Amendment does not "necessarily require that government agents serve a warrant or an attachment thereto, prior to initiating a search or seizing property." *United States v. Pritchett*, 40 Fed. Appx. 901, 907 (6th Cir. 2002). '"[A] search conducted in accordance with a valid warrant does not become warrantless .. . due to the manner in which the officers conducted the search" because the specificity requirement does not extend to the means by which the warrant is executed." *United States v. Whitsell*, 2010 U.S. Dist. LEXIS 56358, *6 (quoting *Baranski v. Fifteen Unknown Agents*, 452 F.3d 433, 441 (6th Cir. 2006)). As it was in *Hudson v. Michigan*, 547 U.S. 586 (2006), the interests protected by the delayed notice requirements are different from those protected by the Fourth Amendment's warrant requirement. When, as in, the interests violated by the failure have nothing to do with the seizure of evidence, the exclusionary rule is inapplicable. Id. at Syllabus, ¶ (b).

## CONCLUSION

For all of the reasons set forth above, Defendant's Motion to Suppress and Motion for *Franks* Hearing are DENIED. (ECF #114, 144). IT IS SO ORDERED.

DATED: October 8, 2026

Donald C. Nugent
DONALD C. NUGENT
United States District Judge